| | | |
|---|---|---|
| RETURN DATE: | March 19, 2024 | : SUPERIOR COURT |
| | | : |
| MARIBEL ORTIZ | | : JUDICIAL DISTRICT OF NEW HAVEN |
| | | : |
| v. | | : AT NEW HAVEN |
| | | : |
| UNIVERSITY OF CONNECTICUT | | : FEBRUARY 9, 2024 |

## COMPLAINT

For more than half of Maribel Ortiz's life, she has worked for UCONN, performing payroll functions and other related tasks. While most employee compensation rates rise annually in a fair and equal manner, that was not the case for Ms. Ortiz. Instead, Ms. Ortiz, a Puerto Rican woman, stayed at the lowest tier of compensation in her class, while other similarly situated White employees were compensated and/or hired throughout the years, at a higher compensation rate and/or given additional job functions or promotions within the same class as her. By granting those less senior employees higher compensation rates, creating a disparity with Ms. Ortiz's compensation, UCONN violated the law. Ms. Ortiz therefore brings this action, after exhausting her administrative remedies, to vindicate her civil rights and recover equal pay for equal work.

## THE PARTIES

1.  Maribel Ortiz (hereinafter "Plaintiff" or "Ms. Ortiz"), is a Puerto Rican woman individual of the full age of majority and a citizen of the State of Connecticut, who resides in Connecticut.

2.  Defendant University of Connecticut (hereinafter "UCONN"), is located at 9 Walters Avenue, Storrs, Connecticut, 06269.

## ADMINISTRATIVE HISTORY AND
## EXHAUSTION OF ADMINISTRATIVE REMEDIES

3. Plaintiff has exhausted her administrative remedies. Plaintiff filed timely notarized claims of discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendant UCONN, which, pursuant to the Worksharing Agreement between the EEOC and the CHRO, was dual-filed with the Connecticut Commission on Human Rights and Opportunities ("CHRO").

4. Plaintiff was granted a Right to Sue letter from the EEOC to pursue her claims in court (Case No. 523-2022-03423) on January 8, 2024.

5. However, despite verification by the EEOC that Ms. Ortiz' Complaint was dual-filed with the CHRO, the CHRO has refused to issue a release of jurisdiction, claiming that a dual-filed complaint filed with the EEOC fails to constitute a filing with the CHRO.

6. The CHRO is incorrect as a matter of law. According to the Worksharing Agreement and federal regulations, Plaintiff filed a timely claim with CHRO. Accordingly, Plaintiff exhausted her state administrative remedies.

7. In the alternative, as a result of the CHRO's violation of its own policies, exhaustion was futile for Plaintiff and should be excused.

## FACTUAL BACKGROUND
## (Relevant to all Counts)

8. Plaintiff, Ms. Ortiz, is a 58-year-old Puerto Rican woman.

9. Plaintiff has been employed with the state for over thirty-four (34) years and for 31 of those years, she has performed in the position of Administrative Program Support 4 ("APS4") at UCONN with her salary grade designated as that of 1P4.

10. There are eight (8) APS4 personnel within Plaintiff's department, all with the exception of the Plaintiff, are White (also known as Caucasian).

11. Throughout the thirty-one (31) years of Plaintiff's employment with UCONN, Plaintiff is and was qualified in her APS4 position and she has always maintained satisfactory or above job performance evaluation and held no disciplinary history.

12. In addition to performing Plaintiff's accounting duties in her APS4 role, Plaintiff also provided Notary services, as well as translation and interpretation services throughout her employment with the Defendant, without additional compensation.

13. For the last thirty-one (31) years, while in her APS4 position at UCONN, Plaintiff has consistently been held to a different standard, paid less than her peers, and consistently bypassed for additional assignments, promotional opportunities and advancement on the basis of her race.

14. Beginning in 2020, Plaintiff's department was working remotely as a result of the COVID-19 pandemic and UCONN notified the department that they would be required to report back in person beginning on August 16, 2021.

15. At that time, Plaintiff requested the accommodation of additional time to return back to the workplace as a result of needing to make arrangements for her disabled child and the difficulty associated with finding such a facility or individual during the pandemic.

16. Plaintiff ended up requiring assistance via her Union for her request and thereafter she was subjected to retaliation when she was suddenly, without cause, issued an unwarranted written warning for having her head down and reading documents during a team meeting that was conducted virtually.

17. Not only was that written warning unwarranted, but Defendant's policy was to issue a verbal warning, prior to a written warning, but Plaintiff was treated differently and held to a different standard when UCONN bypassed the issuance of a verbal and instead issued Plaintiff a formal written warning which was disputed by the Union via another grievance filing.

18. A written warning within Plaintiff's personnel records, would hinder, if not preclude, Plaintiff from transferring into another position with the Defendant.

19. Eight (8) weeks after Plaintiff was issued that written warning, in April, 2022, Plaintiff learned that another co-worker (BP) was retiring. Plaintiff believes that the previous written warning was issued with intent to discriminate in order to block Plaintiff from requesting a transfer into BP's position.

20. Upon Plaintiff checking to see if BP's position was still classified as an APS4 position and falling within the 1P4 salary grade, it came to Plaintiff's attention that while the White BP had been employed with UCONN for sixteen (16) years as compared to Plaintiff's thirty-one (31) years, the White BP was compensated at a significantly higher salary as compared to the significantly more tenured, Puerto Rican Plaintiff.

21. Upon further inspection by the Plaintiff, she further learned that for the fiscal year 2022, all White APS4 personnel within Plaintiff's department were all compensated at a higher salary than that of the Plaintiff.

22. Plaintiff further learned that another White employee who fell into the APS3 lower salary grade classification, was also receiving compensation that exceeded that of the Plaintiff's.

23. Even the least tenured White APS4 employee (JM, Caucasian, younger) who was hired three (3) years earlier in 2019, was compensated at a higher salary rate than that of the Plaintiff.

24. Upon Plaintiff reporting this inequality to the Defendant's Office of Integrity, Plaintiff was advised that the reason for the disparity was that Plaintiff's position did not warrant the same level of pay as compared to the job duties performed by the other White APS4 personnel because Plaintiff's job duties did not include accounting of employees who received benefits.

25. Plaintiff's APS4 Accounting position is substantially the same, if not equal to that of all other APS4 Accounting personnel. The APS4 job description is the same for all APS4 employees and all job duties require substantially equal skill, effort, responsibility, and all functions are performed under similar working conditions with the exception that Plaintiff's volume of payees vs. some of her peers is substantially *more* (for example 600 accounts vs. Plaintiff's 5,000 accounts).

26. Throughout Plaintiff's employment, she was also consistently subjected to systematic discrimination wherein she was continuously held to different standards in not being assigned additional assignments or promotional opportunities. All such assignments/promotions were assigned to Plaintiff's White peers.

27. All additional assignments or promotional opportunities are further not put out for bid, they are personally assigned to the staff by management.

28. Even after Plaintiff brought this glaring pay inequality to the attention of UCONN in October, 2022, when the 2023, annual pay increases took effect, UCONN continued to ignore the discriminatory pay inequality towards the Puerto Rican Plaintiff and

increased the salary of all APS4 employees, continuing to keep Plaintiff's pay below that of her peers.

29. In May, 2023 and June, 2023, UCONN hired on two new younger White APS4's. Both of those new hires were hired at a higher annual salary as compared to the Puerto Rican Plaintiff, despite Plaintiff's 31 years of experience and seniority on the job.

**COUNT ONE – VIOLATION OF TITLE VII 42 U.S.C §2000e, et seq. – DISPARITE TREATMENT ON BASIS OF RACE**

1-26. Plaintiff repeats and realleges each and every allegation set forth above in paragraphs one (1) through twenty-six (26) with the same force and effect as if more fully set forth herein.

30. Plaintiff is a member of the protected class, as she is a Puerto Rican woman.

31. Plaintiff is qualified in her position as an APS4 and has consistently been rated proficient in her APS4 role for the last thirty-one (31) years.

32. Despite Plaintiff holding more qualifications, past and present experience, and significant tenure in her APS4 position as compared to her White Non-Hispanic peers, Plaintiff has been subjected to discrimination, as well as differential and disparate treatment, in that Plaintiff has never been granted additional job assignments or promotional opportunities, as compared to her White peers.

33. Despite Plaintiff, holding thirty-one (31) years of on the job experience, knowledge and verifiable success in her position, Plaintiff has been subjected to pay inequality on the basis of her race, wherein significantly less tenured and newly hired White APS4 employees, are compensated at a higher rate than that of the Plaintiff.

34. As a direct and proximate result of Defendant's actions, Plaintiff has suffered, continues to suffer injury and damages including embarrassment, inconvenience,

humiliation, reputational damage, loss of earning capacity and potential, severe mental anguish, pain, suffering, litigation expense including attorney's fees, medical expense consequential damages and other injury.

35. As a result of said discriminatory conduct, the Plaintiff has suffered damages and is entitled to recover all relief available under the federal statute.

### COUNT TWO – VIOLATION OF C.G.S. 46A-60 (b) (1) – DISPARATE TREATMENT ON BASIS OF RACE

1-26. Plaintiff repeats and realleges each and every allegation set forth above in paragraphs one (1) through twenty-six (26) and twenty-seven (27) through thirty-two (32) of COUNT ONE, with the same force and effect as if more fully set forth herein.

36. As a direct and proximate result of the Defendant's actions, Plaintiff has suffered, continues to suffer injury and damages including embarrassment, inconvenience, humiliation, reputational damage, loss of earning capacity and potential, severe mental anguish, pain, suffering, litigation expense including attorney's fees, medical expense consequential damages and other injury.

37. As a result of said discriminatory conduct, the Plaintiff has suffered damages and is entitled to recover all relief available under the state statute.

### COUNT THREE – VIOLATION OF TITLE VII 42 U.S.C §2000e, et seq. – PAY INEQUALITY ON BASIS OF RACE

1-26. Plaintiff repeats and realleges each and every allegation set forth above in paragraphs one (1) through twenty-six (26), with the same force and effect as if more fully set forth herein.

38. Plaintiff is the only member of her department that is not White/Caucasian.

39. Plaintiff holds the most seniority and is the longest tenured employee within her department.

40. Despite Plaintiff's thirty-one (31) year longevity and success in her role as an ASP4 employee for UCONN, in 2022, every single one of Plaintiff's White peers, regardless of their years of experience, were compensated at a higher salary as compared to the minority Plaintiff.

41. Throughout 2022, a White ASP4, with only three (3) years in her ASP4 role, was compensated at a higher salary rate than that of the thirty-one (31) year employed, Plaintiff.

42. In 2023, six (6) out of the seven (7) White ASP4 employees, were compensated at a higher salary as compared to the Puerto Rican Plaintiff.

43. In 2023, UCONN hired two additional younger White ASP4 employees who were also hired at a higher salary rate than that of the Plaintiff.

44. All ASP4 employees, perform the same or similar accounting functions and fall under the same ASP4 job description.

45. Some ASP4 roles differ slightly, such as some payroll functions may require additional steps regarding specific deductions for employees with health benefits, while other employees, like the Plaintiff may not perform health care deductions, but may be assigned a higher volume of accounting. But in the grand scheme, the positions are similar or relatively closely related.

46. Plaintiff brought forth complaints to UCONN regarding this unfair and unequal compensation, but her complaints went unresolved, and Plaintiff continues to be one of the least compensated ASP4 employees within her department.

47. As a direct and proximate result of the Defendant's actions, Plaintiff has suffered, continues to suffer injury and damages including embarrassment, inconvenience, humiliation, reputational damage, loss of earning capacity and potential, severe mental anguish, pain, suffering, litigation expense including attorney's fees, medical expense consequential damages and other injury.

48. As a result of said discriminatory conduct, the Plaintiff has suffered damages and is entitled to recover all relief available under the state statute.

### COUNT FOUR – VIOLATION OF C.G.S. 46A-60 (b) (1) – PAY INEQUALITY ON BASIS OF RACE

1-26. Plaintiff repeats and realleges each and every allegation set forth above in paragraphs one (1) through twenty-six (26) and twenty-seven (27) through thirty-two (32) of COUNT ONE, with the same force and effect as if more fully set forth herein.

49. As a direct and proximate result of the Defendant's actions, Plaintiff has suffered, continues to suffer injury and damages including embarrassment, inconvenience, humiliation, reputational damage, loss of earning capacity and potential, severe mental anguish, pain, suffering, litigation expense including attorney's fees, medical expense consequential damages and other injury.

50. As a result of said discriminatory conduct, the Plaintiff has suffered damages and is entitled to recover all relief available under the state statute.

### COUNT FIVE – VIOLATION OF ADEA – AGE DISCRIMINATION

1-26. Plaintiff repeats and realleges each and every allegation set forth above in paragraphs one (1) through twenty-six (26), with the same force and effect as if more fully set forth herein.

51. Plaintiff is 61 years of age and has been employed with UCONN for thirty-one (31) years.

52. Plaintiff holds the most seniority and is the longest tenured employee within her department.

53. Despite Plaintiff's thirty-one (31) year longevity and success in her role as an ASP4 employee for UCONN, in 2022, every single one of Plaintiff's White peers regardless of their years of experience, were compensated at a higher salary as compared to the minority Plaintiff.

54. Throughout 2022, a White, significantly younger ASP4, with only three (3) years in her ASP4 role, was compensated at a higher salary rate than that of the thirty-one (31) year employed, Plaintiff.

55. In 2023, six (6) out of the seven (7) Caucasian ASP4 employees, were compensated at a higher salary as compared to the minority Plaintiff.

56. In 2023, UCONN hired two additional substantially younger Caucasian ASP4 employees who were also hired at a higher salary rate than that of the Plaintiff.

57. All ASP4 employees, perform the same or similar accounting functions and fall under the same ASP4 job description.

58. The disparity in Plaintiff's compensation, as compared to her less tenure and younger peers, results in age discrimination.

59. As a direct and proximate result of the Defendant's actions, Plaintiff has suffered, continues to suffer injury and damages including embarrassment, inconvenience, humiliation, reputational damage, loss of earning capacity and potential, severe mental

anguish, pain, suffering, litigation expense including attorney's fees, medical expense consequential damages and other injury.

60. As a result of said discriminatory conduct, the Plaintiff has suffered damages and is entitled to recover all relief available under the state statute.

## **PRAYER FOR RELIEF**

Wherefore Plaintiffs claim the following:

1. Compensatory damages;

2. Costs incurred herein, including reasonable attorney's fees to the extent allowable by law;

3. Punitive damages and expert witness fees;

4. Prejudgment interest;

5. That this Court retain jurisdiction over this matter;

6. Trial by jury;

7. Such other relief as the Court deems just, fair and equitable.

The Plaintiff,
MARIBEL ORTIZ

By: ___/S/_____
    Alexander T. Taubes
    470 James Street
    Suite 007
    New Haven, CT 06513
    (203) 909-0048
    alextt@gmail.com
    ct30100

**PLEASE ENTER AN APPEARANCE FOR THE PLAINTIFF:**

**ALEXANDER T. TAUBES**
**470 JAMES STREET, SUITE 007**
**NEW HAVEN, CT 06513**
**(203) 909-0048**
**ALEXTT@GMAIL.COM**
**JURIS NO.: 437388**

| | | |
|---|---|---|
| RETURN DATE: | March 19, 2024 | : SUPERIOR COURT |
| | | : |
| MARIBEL ORTIZ | | : JUDICIAL DISTRICT OF NEW HAVEN |
| | | : |
| v. | | : AT NEW HAVEN |
| | | : |
| UNIVERSITY OF CONNECTICUT | | : FEBRUARY 9, 2024 |

## AD DAMNUM

Plaintiff claims damages in excess of Fifteen Thousand Dollars ($15,000), exclusive of interest and costs, damages, and additional money damages as are reasonable and proper. The matter is within the jurisdiction of this Court.

                                          PLAINTIFF

                                          By: __/s/__Alexander T. Taubes
                                          Alexander T. Taubes
                                          470 James Street
                                          Suite 007
                                          New Haven, CT 06513
                                          (203) 909-0048
                                          alextt@gmail.com
                                          Juris No.: 437388